# Exhibit B

# Enzo Martinez v. Charlotte Independence

Joint Decision of the Grievance Committee

Issued: June 13, 2022

## BACKGROUND

On December 6, 2018, Enzo Martinez (the "Player") signed a Standard Player Contract (the "Contract") with the Charlotte Independence (the "Club"). At the time that the Club and Player signed the Contract, the Club was participating in the USL Championship (the "Championship"). The term of the Contract (excluding any option periods) was through November 30, 2022. The Contract set forth that the Player was to receive $7,500 per month for the 2021 Season and $9,166.67 per month for the 2022 Season, in each case with payments starting on January 1 and concluding on December 31 of the applicable year.

On October 26, 2021, the USLPA and USL ratified the Collective Bargaining Agreement (the "CBA"), and each Standard Player Agreement (or "SPA") then in effect (including the Contract) was "deemed amended in such a manner as to require the parties to comply with all terms of this CBA…" *See CBA Article 8.C.*

On December 2, 2021, the Club publicly announced that it would be moving from the USL Championship to USL League One ("League One"), beginning with the 2022 Season. Generally, pursuant to the CBA, when a Club ceases to participate in the Championship, the Club's SPAs are deemed to have been amended such that their term expires as of November 30 following the last Season in which the Club fielded a team. *See CBA Article 8.M.1.* However, Article 8.M.2 addresses those circumstances in which "a Club ceases to field a team in the League but nonetheless fields a team in another professional league operated by USL (or its affiliate) the following season…" In those circumstances, for any player that has "Guaranteed Contract Years" remaining on his SPA, the Club is provided with the following two options, as set forth in Article 8.M.2(a)-(b):

(a) The Club may, in its discretion, offer the Player the opportunity to continue playing with the Club on the same terms and conditions as set forth in his SPA. If the Player accepts the offer (or the Club and Player agree on modified terms or conditions), the Club and Player shall execute a new contract reflecting same…

(b) If the Club does not offer the Player the opportunity to continue playing with the Club on the same terms and conditions as set forth in his SPA, or the Club and Player do not otherwise agree on modified terms and conditions, such Club shall pay the Player an amount equal to three (3) months' base Salary by the later of (i) January 31 and (ii) thirty (30) days following the date the Club formally moves to the other professional league operated by USL (or its affiliate).

While the Club and Player had certain discussions surrounding whether the Player would want to return for the 2022 Season, the Club never expressly made an offer to the Player that he could continue playing on the same terms and conditions as set forth in his SPA. The Club did, however, continue to pay the Player through December 2021.

In connection with the above, the USLPA has alleged (on behalf of the Player) that:

(1) the Player was entitled to receive payment through December 31, 2021 for services rendered during the 2021 season; and

(2) the Club is obligated to pay the Player an amount equal to three (3) months' base Salary no later than January 31, 2022.

## ANALYSIS

*2021 Compensation.*

Regardless of whether Article 8.M.2(a) or (b) applies (addressed below), the Player was entitled to be paid the entirety of his Contract with respect to the 2021 season. There is no dispute that the Contract was deemed to be amended such that it expired as of November 30, 2021. However, the Player contends that his 2021 compensation included his monthly salary of $7,500 through December 31, 2021, whereas the Club contends that it was not required to make compensation payments beyond November 30, 2021.

Each SPA (both pre- and post-CBA) is written such that it expires on November 30 of a given year, but expressly permits the parties to thereto to negotiate for payments to continue beyond such date. With respect to the Contract, the parties included that "for each subsequent season [beyond 2019], payment shall end on December 31". The Club also included in Addendum D to the Contract that the Player would be paid a salary of $90,000 in 2021 (which would only be accurate if the Player were to be paid from January 1, 2021 through December 31, 2021). Accordingly, the Grievance Committee finds that, with respect to the 2021 season, the Player was entitled to be paid through December 31, 2021.

*Application of Article 8.M.2.*

The Club has indicated that Article 8.M.2(a) applies. However, in order for Article 8.M.2(a) to apply, the Club must "offer the Player the opportunity to continue playing with the Club on the same terms and conditions as set forth in his SPA." In its submissions, the Club has indicated that it "offered to him that [it] wanted to retain him for the 2022 season (and beyond)…", "spoke with Enzo on the matter," "re-engaged with Enzo after playoffs," and later "had some back and forth." However, even looking at the Club's assertions in the best possible light, there is still nothing indicating that a formal offer was ever made, much less that it was "on the same terms and conditions as set forth in his SPA." The only written documentation of an offer came on or around December 2 in the form of a mutual release which requested the Player acknowledge "that he is not entitled to additional compensation" (and which the Player did not ultimately sign). For the foregoing reasons, the Grievance Committee finds that the Club never made an offer which satisfied the requirements of Article 8.M.2(a) and, accordingly, Article 8.M.2(b) applied.

*Damages*

Pursuant to Article 8.M.2(b), the Club was required to "pay the Player an amount equal to three (3) months' base Salary by…January 31". At the Player's 2022 monthly salary of $9,166.67, the

Grievance Committee finds that the Club has owed the Player the sum of twenty-seven thousand five hundred dollars ($27,500) since January 31, 2022.

Pursuant to New York law (in accordance with Article 27.C of the CBA), this amount has also accrued simple (non-compounding) interest at the annual rate of 9% since February 1, 2022. Accordingly, as of today's date, the Club owes the Player the sum of **twenty-eight thousand four hundred and one dollars and eighty-five cents ($28,401.85).**

This amount shall be paid to the Player by **Monday, June 20, 2022** and shall accrue simple (non-compounding) interest at the annual rate of 9% for each day thereafter that such amount remains unpaid.